## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

ROSANN WILLIAMS, et al.,

     Plaintiffs,

v.                                  Civil No. 03-1195 WJ/ACT

W.D. SPORTS N.M., INC., et al.,

     Defendants.

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS BY MARIA MARQUART

     THIS MATTER comes before the Court pursuant to Defendants' Motion for Summary Judgment as to All Claims by Maria Marquart [Docket No. 129].

## BACKGROUND

     Defendant W.D. Sports N.M., Inc. d/b/a The New Mexico Scorpions (W.D. Sports) is a professional hockey team that plays in Albuquerque, New Mexico. At all times relevant to this case, Defendant William Douglas Frank was the president of W.D. Sports. Defendant Patrick J. Dunn was the General Manager (GM) of the hockey team in the Spring of 2001 and became head coach in April 2002.[1] Dan Burgers replaced Dunn as GM in April 2002 when Dunn became head coach. Defendant Tyler Boucher was assigned in July 2001 to assist in sales. He eventually became Assistant to the President. Defendant Bruce Levine was hired as comptroller, CPA and lawyer after all but one plaintiff, Plaintiff Marquart, had left the organization.

     Plaintiff Maria Marquart worked for W.D. Sports as a part-time employee in the team store. Marquart's date of hire is unclear from the record. However, the 2001-2002 hockey

---

[1] At some time subsequent to the events in this case, Mr. Dunn transferred to Texas.

season was Marquart's first experience running a retail store.  Marquart also had no previous experience selling hockey equipment or merchandise.  Marquart was initially hired at a rate of $6.00 per hour.  At the time her employment ended, she was making $8.50 per hour.  Her hours fluctuated depending on the hockey season.  Marquart had no written employment contract and understood herself to be an "at will" employee.  Plaintiff Daly was Marquart's supervisor.

Marquart's duties including keeping track of store inventory, customer service, selling merchandise, acting as store cashier, answering the phone, selling single-game tickets from the store and the arena, opening and closing the store, and looking for new merchandise.  During Marquart's employment, there were no other part-time or full-time employees with Marquart's identical job duties.  However, on game days, W.D. Sports contracted with individuals to help sell tickets.  These individuals were paid $10.00 per hour.  According to Plaintiff, none of these individuals was female.

While Marquart was employed with W.D. Sports, Defendant Boucher once came into the team store and complained to her about not having sex with his wife.  He began to say something more, and Marquart told him she did not want to hear about it.

Marquart's deposition testimony indicates she heard Boucher use a lot of words, and that he had large vocabulary for women, but she cannot remember whether she ever personally heard him use the word "cougar."  She testified that whenever Boucher came into the team store wanting something such as tickets, he wanted it immediately.  He often yelled at her, and almost always used vulgar language such as "bitch," "fucking bitch," "cunt."  She cannot remember a time when Boucher came into the store demanding something that he did not use such language.  Marquart complained about this to her supervisor, Plaintiff Daly.  On another occasion, she went

2

to Dunn after Boucher had demanded tickets and merchandise from the store.  Dunn told her to give Boucher anything he wanted.

Boucher called Marquart a "fucking bitch" to her face on numerous occasions as he passed her in hallways.  Boucher once asked Marquart if she had been "ho-hoing it on Central"[2] because she "dressed like a slut."   Marquart complained to Defendant Dunn about Boucher's behavior and language.

Ms. Marquart overheard a Scorpions employee, Daniel Luna, refer to Plaintiff Daly as "queen bitch."   Ms. Marquart reported this to Daly and learned that Luna had referred to Marquart as a "fucking bitch" in front of other staff.

Scorpions employee Scotty Morris often called Marquart names at work such as "honey," "baby," "sweetheart," and "darling."   Marquart complained of this to Daly and to Defendant Levine.  After her complaint, Morris continued to call Marquart names, but changed the terminology.

According to Marquart, customers hit on her and made lewd comments.  She complained about this to Dunn, and he told her it was good for business.  At some point during Ms. Marquart's employment with W.D. Sports, her supervisor, Plaintiff Daly, reprimanded her for wearing short skirts to work.  Defendant Dunn contradicted Daly's reprimand and told Marquart that her short skirts would be great for sales.  Dunn then told her he would design her a "cute little outfit" or an outfit "just like Hooters."

Other persons working for W.D. Sports observed Boucher taking merchandise from the team store without paying for it.  Marquart observed items missing from the store when she took

_____

[2]Central Avenue is old Route 66, the original "main street" through Albuquerque.

inventory.  She gave an inventory showing approximately $1,500 worth of missing merchandise to Plaintiff Hunter who passed the information onto Dunn.  Marquart was questioned about the missing merchandise and missing tickets.

Defendants assert that Marquart participated in conversations at work of a sexual nature. Marquart disputes this allegation.

No part of Marquart's job was conditioned on Marquart performing sexual acts, and she was never forced to engage in any sexual conduct.  However, Marquart contends that she was pressured by Defendants Boucher and Dunn to flirt with customers and dress provocatively.

In late summer 2002, Defendants hired Rob Stanley as a full-time employee to manage the store.  Stanley had previously managed retail stores for Defendant Frank in Texas.  Marquart asserts that Stanley was paid much more than she had been paid.  However, she offers no evidence with regard to Stanley's pay.  According to Marquart, she was told that someone was being hired to replace her, but that she could stay to work under the new store manager. Marquart contends that she was happy in her job and thought Defendants were happy with her performance until she heard that Stanley had been hired to do the job that she believed was hers.

Defendants assert that Marquart resigned from her job.  Marquart disputes that her termination was voluntary.  Her deposition testimony indicates that she quit her job because she perceived Stanley's employment as store manager as a demotion for her.

After Marquart's employment with W.D. Sports ended, she applied for a job with the Isotopes.[3]  After initially hearing from the Isotopes store manager that he was interested in her, she never heard anything else.  Marquart believes that Defendants thwarted the possibility of her

---

[3]The Isotopes are a professional baseball team that plays in Albuquerque, New Mexico.

employment with the Isotopes but does not know what role they played, if any, in the failure of the Isotopes to hire her.

Ms. Marquart has asthma and scoliosis.  Stress causes the muscles in her back to tighten up and pull on her spine which causes pain.  Stress also triggers her asthma making it difficult for her to breathe.  Marquart claims that her stress at W.D. Sports resulted in an exacerbation of her asthma and the pain associated with her scoliosis.  Marquart now sees a masseuse and takes over-the-counter anti-inflammatory medications for pain.  Marquart also claims that her experiences at W.D. Sports have caused her to have "attacks" but is not sure that a doctor would characterize these as panic attacks.  Marquart found the conduct of the Defendants offensive.  While working for W.D. Sports, she changed from a happy, well adjusted person to a frustrated and angry person.  She experienced increased asthma attacks, loss of hair, loss of sleep, increased back pain, weight fluctuations, and a severe loss of confidence.

**LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of showing an absence of a genuine issue of material fact falls upon the moving party.  See Adler v Wal-Mart Store, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  However, when the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by pointing out to the Court that there is an absence of evidence to support the nonmoving party's case.  Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Adler, 144 F.3d at 671.  The nonmoving party must then go beyond the

pleadings to set forth specific facts showing that there is a genuine issue for trial sufficient to support a verdict for the nonmovant.  Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  All reasonable factual inferences must be drawn in favor of the nonmoving party. Seamons v Snow, 206 F.3d 1021, 1026 (10th Cir. 2000); Curtis v Oklahoma City Public Sch. Bd. of Ed., 147 F.3d 1200, 1214 (10th Cir. 1998).  By failing to respond to an issue in a summary judgment motion, a nonmoving party confesses all facts asserted and properly supported in the motion with regard to that issue.  Murray v. City of Tahlequah, 312 F.3d 1196, 1199 (10th Cir. 2002).

**DISCUSSION**

I.      MARQUART'S CLAIM FOR DISABILITY DISCRIMINATION, CLAIM UNDER THE EQUAL PAY ACT, CONTRACT CLAIMS, RETALIATORY DISCHARGE CLAIM, FALSE LIGHT AND DEFAMATION CLAIM, AND CLAIM FOR INTERFERENCE WITH A BUSINESS ADVANTAGE

Plaintiff Marquart originally brought claims for disability discrimination under the ADA and the New Mexico Human Rights Act (NMHRA) in Counts fifteen XV and sixteen (XVI), a claim under the Equal Pay Act in Count eighteen (XVIII), claims for breach of contract, breach of implied contract, and breach of the implied covenant of good faith and fair dealing in Counts nineteen (XIX), twenty (XX) and twenty-one (XXI), a claim for retaliatory discharge in Count twenty-two (XXII), claims for false light and defamation in Counts twenty-three (XXIII) and twenty-four (XXIV), and a claim for interference with a business advantage in Count twenty-six (XXVI).  Marquart's response to Defendants' motion for summary judgment indicates her consent to dismissal of these claims.  Therefore, Defendants are entitled to summary judgment these claims.

6

II.     MARQUART'S GENDER DISCRIMINATION CLAIMS

Marquart's Title VII claims include Count six (VI) for gender disparate treatment, Count seven (VII) for gender sexual harassment, and Count eight (VIII) for gender hostile work environment.  Her New Mexico Human Rights Act (NMHRA) claims for gender discrimination include Count nine (IX) for gender disparate treatment, Count ten (X) for gender sexual harassment, and Count eleven (XI) for gender hostile environment.

Marquart's factual allegations are similar to those made by Plaintiffs Hunter and Williams.  In addressing the motion for summary judgment with regard to Hunter's claims, the Court analyzed her claims in order to differentiate them from one another.  See Memorandum Opinion and Order filed October 28, 2004 [Docket No. 165].  The Court did the same with regard to Defendants' motion for summary judgment with regard to Williams' claims.  See Memorandum Opinion and Order filed January 11, 2005 [Docket No. 184].   The Court noted that sexual harassment may be either a claim for hostile environment sexual harassment or quid pro quo sexual harassment.  Marquart, like Williams and Hunter, alleged a claim for hostile environment in Counts eight (VIII) and eleven (XI) separate from her claims of sexual harassment in Counts seven (VII) and ten (X).  These claims are duplicative of one another unless Marquart intends the claims in Counts seven (VII) and ten (X) as claims for quid pro quo sexual harassment.

Quid pro quo sexual harassment involves a conditioning of tangible employment benefits upon the submission to sexual conduct.  Hicks v Gates Rubber Co., 833 F.2d 1406, 1413 (10th Cir. 1987).  The facts set forth by Marquart indicate that she was pressured by Defendants Boucher and Dunn to flirt with customers and dress provocatively.  However, nothing in Marquart's alleged disputed facts raises a genuine issue for trial with regard to whether any

tangible employment benefits were conditioned on her submitting to this pressure.  Additionally, Marquart makes no arguments in response to the motion for summary judgment indicating a claim for quid pro quo sexual harassment.  Therefore, Judgment for Defendants is granted with regard to Williams' claims in Counts seven (VII) and ten (X).

Hostile work environment harassment occurs "where [sexual] conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating hostile or offensive working environment." Meritor Sav. Bank, 477 U.S. at 65. From the facts alleged, supported and argued with respect to the Motion for Summary Judgment, there is no doubt that Marquart intends a claim for hostile work environment sexual harassment.

There are two types of employment discrimination.  There is disparate treatment discrimination which occurs when an employer treats an employee less favorably than others on the basis of that employee's race, gender or some other protected characteristic.  Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993).  There is also disparate impact discrimination which occurs when a facially neutral employment practice has a greater negative impact on a protected class of employees and the practice is not justified by a business necessity.  Id.  Clearly, Marquart's claims of hostile environment sexual harassment are brought under the disparate treatment theory of employment discrimination.  Thus, to the extent Marquart's employment discrimination claims are based on a hostile work environment, her disparate treatment claims in Counts VI and IX are superfluous in light of her claims in Counts VIII and XI.  Marquart argues that, in addition to the hostile environment, she was treated differently than male employees because she was paid less and because men received more generous conditions of employment including special perquisites and a more flexible code of conduct.  Marquart also alleges that her

8

resignation was not volutary.  Thus, her disparate treatment claims in Counts VI and IX will be analyzed only on the basis of the alleged unequal pay and unequal benefits and terms of employment and her allegation that she was constructively discharged on the basis of her gender.

      A.    <u>Marquart's Disparate Treatment Claims in Counts VI and IX.</u>

The three-stage <u>McDonnell Douglas</u> burden shifting analysis applies to claims of discrimination under Title VII when no direct evidence of discrimination exists.  <u>See</u> <u>Bullington v. United Air Lines, Inc.</u>, 186 F.3d 1301, 1315-16 (10th Cir. 1999) <u>overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002).  The same analysis is used for claims under the New Mexico Human Rights Act.  <u>Martinez v. Yellow Freight Sys., Inc.</u>, 826 P.2d 962, 964-65 (N.M.1992).  At the first stage, the plaintiff must prove a prima facie case of discrimination.  <u>Perry v. Woodward</u>, 199 F.3d 1126, 1135 (10th Cir. 1999).  Plaintiff establishes a prima facie case by showing that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class. <u>Sanchez v. Denver Pub. Sch.</u>, 164 F.3d 527, 531 (10th Cir.1998) (citations omitted).  With regard to Title VII equal pay claims, a plaintiff makes a prima facie case of discrimination by showing that she occupies a job similar to that of higher paid males.  <u>Sprague v. Thorn Americas, Inc.</u>, 129 F.3d 1355, 1363 (10th Cir. 1997).  If the plaintiff satisfies her burden and makes a prima facie showing, the burden shifts to the defendant to produce a facially legitimate, non-discriminatory reason for its actions.  <u>Id.</u>  If the defendant articulates a legitimate, nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to show that the defendant's proffered reason for the action is a pretext for discrimination.  <u>Id.</u>

9

There is no dispute that Marquart, a woman, is a member of a protected class.  There is also no dispute that she was qualified for her job.  Thus, the first and third prongs of Marquart's prima facie case are not at issue, and the Court will focus on the disputes with regard to the second and fourth prongs.

The Tenth Circuit liberally defines "adverse employment action."  Sanchez, 164 F.3d at 532.  Ultimately, action is adverse employment action if it constitutes a significant change in employment status such as, but not limited to, hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.  Id. The guiding principal in the Court's case-by-case analysis is that an adverse employment action is one that alters the employee's compensation, terms, conditions, or privileges of employment, or adversely affects her status as an employee.  Heno v. Spring/United Mgmt. Co., 208 F.3d 847, 857 (10th Cir. 2000).

It is clear that being fired is an adverse employment action.  However, Marquart has provided insufficient evidence that she was terminated.  Marquart asserts that her resignation was not voluntary.  Thus, she is apparently arguing that she was constructively discharged.  An employee who is not formally discharged may still have been constructively discharged if the employee was forced to quit due to intolerable working conditions.  Bolden v. PRC Inc., 43 F.3d 545, 552 (10th Cir. 1994).  "Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign."  Sanchez v. Denver Public Schools, 164 F.3d 527, 534 (10th Cir. 1998).  "If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged."

Jeffries v. State of Kansas, 147 F.3d 1220, 1233 (10th Cir. 1998); Parker v. Bd. of Regents of Tulsa Junior College, 981 F.2d 1159 (10th Cir. 1992). "Essentially, a plaintiff must show that she had no other choice but to quit." Sanchez, 164 F.3d at 534. The standard for constructive discharge is objective. Therefore, the issue is whether a reasonable person in a plaintiff's position would have viewed the working conditions as intolerable. Jeffries, 147 F.3d at 1233; Derr v. Gulf Oil Corporation, 796 F.2d 340, 343 (10th Cir. 1986). A plaintiff's subjective views of the working conditions are irrelevant. Sanchez, 164 F.3d at 534.

Marquart argues that she was forced to resign because the Defendants hired a full-time retail manager, and this meant that she, as the part-time store manager, had been replaced. There is no dispute that Marquart was informed that she could keep her job and work for the new full-time retail manager. There is no evidence that Marquart was to receive a pay cut, significantly reduced work hours, or any other significant change in her working conditions. No reasonable person in Marquart's position would have viewed the hiring of a full-time retail manager as creating intolerable working conditions. In light of this, Marquart has failed to show that she had no other choice but to quit and has thus failed to show that she was constructively discharged. Accordingly, her resignation from employment cannot be an adverse employment action for purposes of her disparate treatment claim.

It is well established that being paid less than male employees in similar positions and being given less generous benefits and perquisites than male employees in similar positions are adverse employment actions. See Sprague, 129 F.3d at 1363. However, Marquart's allegation that she was not paid as much as male employees in similar positions is not supported by the evidence. Marquart, while arguing that the person hired as the full-time manager was paid more

than she, offers no evidence with regard to this person's salary or benefits. Thus, even if Marquart's position could be viewed as similar to the full-time position, she has failed to show any inequality in pay. Marquart does submit evidence that males engaged by contract on a game-by-game basis to sell tickets were paid more than she was. However, short-term contractual positions are not similar to positions of actual employment, and the pay of persons hired on a short-term contractual basis is not comparable to the pay of an actual employee. Accordingly, Marquart has not provided sufficient evidence that she was paid less than any male employee in a similar position, and her pay is not an adverse employment action for purposes of her disparate treatment claim.

As already noted, Marquart could show an adverse employment action if she provided evidence that she received less generous benefits than a male in a similar position. Marquart makes a general allegation in her argument in response to the motion for summary judgment that male employees received more generous conditions of employment, received special perquisites such as merchandise, rent and trips, and were allowed to exercise a more flexible and flamboyant code of conduct than the women. However, Marquart's general allegation does not cite to any evidence in the record and thus, is unsupported for purposes of summary judgment. Additionally, Marquart offers no evidence that any male who received these more generous conditions of employment were in positions similar to Marquart's. Therefore, these allegations do not show adverse employment action for purposes of Marquart's disparate treatment claim.

Marquart has failed to satisfy her burden of showing any adverse employment action and has thus failed to make a prima facie showing of disparate treatment discrimination. Defendants

are consequently entitled to summary judgment with regard to Marquart's disparate treatment claims in Counts six (VI) and nine (IX).

      B.    <u>Marquart's Hostile Environment Claims in Counts VIII and XI.</u>

      Title VII forbids actions taken on the basis of sex that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." <u>Faragher v. Boca Raton</u>, 524 U.S. 775, 786 (1998) (citing 42 U.S.C. § 2000e-2(a)(1)).  Hostile work environment harassment occurs when unwelcome sexual conduct "'unreasonably interfer[es] with an individual's work performance or creat[es] an intimidating, hostile, or offensive working environment.'" <u>Smith v. Norwest Financial Acceptance, Inc.,</u>129 F.3d 1408, 1412 (10th Cir. 1997) (citing <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 65 (1986)); 29 C.F.R. S 1604.11(a)(3).  <u>Meritor</u> states that "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'"  477 U.S. at 67 (citation omitted).  There is no "mathematically precise test" for determining whether conduct is sufficiently severe or pervasive.  <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 22 (1993).  Some factors to be weighed include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Id.</u> at 23.  The severity and pervasiveness of allegedly harassing conduct is normally a question of fact so is normally unsuited for summary judgment.  <u>McCowan v. All Star Maintenance, Inc.</u>, 273 F.3d 917, 923 (10th Cir. 2001).

      The Tenth Circuit has stated that, "Our precedents, however, eschew ... a mechanical approach to analyzing hostile work environment claims."  <u>Penry v. Federal Home Loan Bank of</u>

Topeka, 155 F.3d 1257, 1261 (10th Cir. 1998).  In Meritor, the Supreme Court stated that the

existence of sexual harassment must be determined "in light of the record as a whole," and the

trier of fact must examine the totality of the circumstances, including "the context in which the

alleged incidents occurred."  477 U.S. at 69 (quoting 29 C.F.R. S 1604.11(b) (1985)) (internal

quotation marks omitted).  Indeed, the very term "environment" indicates that allegedly

discriminatory incidents should not be examined in isolation.  Penry, 155 F.3d at 1261.  Thus, this

Court must examine the totality of the circumstances in reviewing the summary judgment motion

with regard to Marquart's hostile environment claims.  See, Davis v. U.S. Postal Svc., 142 F.3d

1334, 1341 (10th Cir. 1998); Smith, 129 F.3d at 1413.

Marquart alleges that:

1).     Defendant Boucher once came into the team store and complained about not
        having sex with his wife;
2).     she heard Boucher use a lot of words, and he had a large vocabulary for women;
3).     The times Boucher came into the store, he often yelled at her, and almost always
        used vulgar language such as "bitch," "fucking bitch," and "cunt."
4).     Boucher called Marquart a "fucking bitch" on numerous occasions;
5).     Boucher asked Marquart if she had been "ho-hoing it on Central" because she
        "dressed like a slut;"
6).     Marquart overheard a male employee refer to Plaintiff Daly as "queen bitch."
7).     Marquart learned that the same male employee had referred to her as a "fucking
        bitch" in front of other employees;
8).     A second male employee often called Marquart "honey," "baby," "sweetheart,"
        and "darling;"
9).     Marquart complained to Defendant Dunn that customers hit on her and made lewd
        comments to her, and Dunn's response was that it was good for business;
10).    Dunn told Marquart that her short skirts would be great for sales.
11).    Dunn told Marquart he would design her a "cute little outfit," or an outfit "just like
        Hooters;" and
12).    Defendants Dunn and Boucher encouraged her to flirt with customers and dress
        provocatively.

14

Some of the arguments made by Defendants in support of the instant motion for summary judgment parallel those made in support of summary judgment on Hunter's and Williams' claims. For instance, Defendants' argument for summary judgment on Marquart's claims argues that many of the allegedly harassing terms and names used by Boucher and others are not inherently sexual and do not necessarily connote specific female characteristics. Defendants also urge that Marquart has failed to raise a genuine issue of material fact as to whether she subjectively perceived the work environment as abusive because the evidence shows that she failed to complain about each the behavior and because she allegedly used profanity herself and engaged in sexual conversations.

Whether Marquart complained and whether she allegedly used profanity or engaged in sexual conversations are disputed issues of fact. Moreover, Marquart's complaints are relevant to Defendants' defense under Faragher v. Boca Raton, 524 U.S. 775, 786 (1998) for which Defendants bear the burden of proof. The evidence provided by Marquart in response to the motion for summary judgment shows conduct that is less severe and pervasive than the conduct alleged by Hunter and Williams. Compare Memorandum Opinion and Order filed October 28, 2004 [Docket No. 165] (describing Hunter's allegations) and Memorandum Opinion and Order filed January 11, 2005 [Docket No. 184] (describing Williams' allegations) with the facts described herein. However, it is certainly more severe and pervasive than the conduct alleged by Plaintiff Daly to have created a hostile environment. Compare Memorandum Opinion and Order filed November 12, 2004 [Docket No. 173] (describing Daly's allegations) with the facts alleged herein. The evidence provided by Marquart, like that of Hunter and Williams, shows a pattern of gender based name calling, vulgar language, and sexually based comments directed toward

Marquart or made in her presence.  This is not at all similar to the allegations by Daly that

involved many comments that were not even remotely sexual or gender related, were not made in

Daly's presence, and/or were not directed at Daly.  Given the totality of the circumstances, the

Court cannot say, as a matter of law, that the conduct alleged by Marquart was not sufficiently

severe or pervasive to alter the conditions of her employment and create an abusive working

environment.  Accordingly, Defendants are not entitled to summary judgment with regard to

Marquart's claims for gender hostile environment in Counts VIII and XI.

III.    MARQUART'S CIVIL CONSPIRACY AND AIDING AND ABETTING CLAIMS

        To establish a claim for civil conspiracy, a plaintiff must demonstrate that (1) a conspiracy

between two or more individuals existed; (2) specific wrongful acts were carried out by the

defendants pursuant to the conspiracy; and (3) plaintiff was damaged as a result.  Ettenson v.

Burke, 17 P.3d 440 (N.M. App. 2000).  An actionable civil conspiracy must involve a

combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful

purpose by unlawful means.  Las Luminarias of the New Mexico Council of the Blind v. Isengard,

587 P.2d 444, 447 (N.M. App. 1978).  The existence of a civil conspiracy must be pled by direct

allegations or by allegations of circumstances from which a conclusion of the existence of a

conspiracy may be reasonably inferred.  Id.  The circumstances, considered as a whole, must

create a genuine issue of material fact regarding an agreement among the alleged conspirators.

Morris v. Dodge Country, Inc., 513 P.2d 1273, 1274 (Ct. App. 1973).

        The New Mexico Human Rights Act makes it an unlawful discriminatory practice for any

person or employer to "aid, abet, incite, compel or coerce the doing of any unlawful

discriminatory practice or attempt to do so . . . .  N.M. Stat. Ann. 1978 § 28-1-7(I)(1).  No New

Mexico cases have interpreted the aiding and abetting aspect of the Human Rights Act.  However, New Mexico courts have addressed actions in tort for aiding and abetting others to commit tortious acts.  See GMC, Inc. v. Kentucky Central Life Ins. Co., 947 P.2d 143 (N.M. 1997).  In GMC, Inc., the New Mexico Supreme Court recognized an action in tort for aiding and abetting a breach of fiduciary duty.  In doing so, the court specifically referenced the Restatement (Second) of Torts § 876(b) and stated that, "New Mexico recognizes tort liability for aiding and abetting another's tortious conduct."  GMC, Inc., 947 P.2d at 147.  The Restatement provides that a person is liable for the tortious conduct of another when he knows that the other's conduct is a breach of duty to a third person and he gives substantial assistance or encouragement to the other's conduct, or if he gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.  Restatement (Second) of Torts § 876(a) and (b).

Defendants argue that Marquart has no evidence of concerted action among any of the Defendants and thus fails to create a genuine issue of material fact with regard to all of the essential elements of either a civil conspiracy or an aiding and abetting claim.  In response, Marquart makes the conclusory statements that, ". . . nor was this abuse carried out by a single person alone" and " . . . because it was concerted, because it was ratified, because it was condoned."  See Docket No. 139 p. 18.

On summary judgment, the movant may meet its Rule 56 burden by pointing out to the court that the nonmovant "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322-23.  Once a movant has met its burden of pointing out that the

nonmovant has failed to show the existence of an element essential to her case, the burden shifts

to the nonmoving party to establish the existence of a genuine issue for trial. Matsushita Electric

Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-7 (1986).  To meet her burden, the

nonmovant must "designate specific facts showing that there is a genuine issue for trial." Celotex,

477 U.S. at 324. The nonmovant cannot satisfy its burden with conclusory allegations. Lujan v.

National Wildlife Federation, 497 U.S. 871, 888 (1990).

Marquart's conclusory statement in response to Defendants' motion for summary

judgment on the civil conspiracy and aiding and abetting claims falls short of meeting her burden

of establishing the existence of a genuine issue for trial.  Marquart made no efforts to designate

specific facts showing a genuine issue for trial on each of the elements of a civil conspiracy claim

or aiding and abetting claim, and the Court will not comb through the voluminous record in this

case searching for evidence to support the claims.  Consequently, Defendants are entitled to

summary judgment with regard to these claims.

## IV.  MARQUART'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants make three arguments in support of summary judgment on Marquart's claim

for intentional infliction of emotion distress (IIED).  Defendants first urge that the IIED claim is

actually an element of damages for Marquart's other claims rather than a separate claim.  Then,

assuming that Marquart's other claims fail at the summary judgment stage, Defendants contend

that the IIED damages must also fail.  Second, Defendants argue that, even if the IIED claim is

considered a separate claim rather than just a damages component of other claims, it must fail

because it is barred by the exclusivity provisions of the New Mexico Worker's Compensation Act.

18

Finally, Defendants contend that Marquart has failed to support the claim because the facts do not show sufficiently outrageous behavior or sufficiently severe emotional distress for an IIED claim.

Defendants' first two arguments are easily rejected. There is no legal support for the argument that IIED is a component of damages rather than a distinct legal claim. While emotional distress is a component of damages for many claims, New Mexico has unequivocally recognized a separate claim for the tort of IIED. See Dominguez v. Stone, 638 P.2d 423, 426 (N.M. App. 1981). Defendants' contention that an IIED claim is barred by the exclusivity provision of the Worker's Compensation Act (WCA) is equally without merit. Injuries caused by sexual harassment do not arise out of employment and are not covered by the WCA. See Coates v. Wal-Mart Stores, Inc., 976 P.2d 999, 1005 (N.M. 1999). Accordingly, "the exclusivity provision [of the WCA] does not preclude an employee from seeking a remedy outside the WCA for injuries caused by sexual harassment." Id.

In order to establish a claim for IIED, a plaintiff must show that (1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the plaintiff's mental distress. Trujillo v. N. Rio Arriba Elec. Coop., Inc., 41 P.3d 333, 342 (N.M. 2001). Extreme and outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. (citing Restatement (Second) of Torts § 46 cmt. d). As a threshold matter, a trial court must determine whether, as a matter of law, the conduct at issue may reasonably be regarded as sufficiently extreme and outrageous as to permit recovery under the

tort of IIED.  Id. at 343.  If reasonable persons could differ on the question, the issue whether the conduct is sufficiently extreme and outrageous is for the jury.  Id.  To show extreme and severe emotional distress sufficient to recover on a claim for IIED, a plaintiff must provide evidence of emotional distress of such an intensity and duration that no ordinary person would be expected to tolerate it.  Id. at 343.  N.M. UJI 13-1628.  "Severe emotional distress means that a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances."  Trujillo, 41 P.3d at 343.  "The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it."  Id.

As noted in the analysis of Marquart's hostile work environment claim, Marquart has provided evidence of conduct that a reasonable jury could find sufficiently severe and pervasive to alter the conditions of Marquart's employment and create an abusive working environment. However, the "severe and pervasive" analysis relevant to a hostile work environment claim is not the same as the "extreme and outrageous" analysis relevant to an IIED claim.  The "severe and pervasive" analysis only requires that the conduct have the capability of altering a plaintiff's conditions of employment and create an abusive environment.  The "extreme and outrageous" analysis requires that the conduct be "utterly intolerable."   The Court has already noted that the allegedly abusive conduct for which Marquart has provided evidence is less severe and pervasive than the conduct alleged by Hunter and Williams.

In the Memorandum Opinion and Order filed November 4, 2004 [Docket No. 170] on Defendants' motion for summary judgment with regard to Hunter's claims, this Court compared the facts underlying Hunter's claims to those in two New Mexico cases, Trujillo v. N. Rio Arriba Elec. Coop., Inc., 41 P.3d 333 (N.M. 2001) and Coates v. Wal-Mart Stores, Inc., 976 P.2d 999

(N.M. 1999).  In Trujillo, the New Mexico Supreme Court found that the facts alleged by the

plaintiff were insufficient to support a claim for IIED because they did not represent sufficiently

extreme and outrageous behavior.[4]  Conversely, the New Mexico Supreme Court found in Coates

that the plaintiff had shown sufficiently extreme and outrageous conduct on the part of the

defendant to support a jury verdict in favor of Plaintiff on an IIED claim.[5]  In denying Defendants'

motion for summary judgment with regard to Hunter's claim for IIED, this Court found that the

facts assumed in a light most favorable to Hunter were more similar in terms of egregiousness to

the conduct at issue in Coates than the conduct at issue in Trujillo.

The Court performed a nearly identical analysis in addressing the Defendants' motion for

summary judgment with regard to Williams' claims.  See Memorandum Opinion and Order filed

January 11, 2005 [Docket No. 184].  The Court did not expressly compare Williams' and

Hunter's allegations.  However, the Court's analysis of Hunter's IIED claim included mention

that Hunter was subjected to foul language, lewd and vulgar suggestions and obscene gestures

while the Court's analysis of Williams' claim noted only that Williams was yelled at and suffered

abusive or foul language.[6]

---

[4]In Trujillo, the plaintiff, after working for the defendant for fifteen years, was fired immediately after returning to work from one month of sick leave due to a serious medical condition.

[5]In Coates, a supervisor made lewd and vulgar suggestions to two plaintiffs on numerous occasions, made an obscene gesture on one occasion, grabbed one plaintiff's breast, and, on another occasion, pulled open the other plaintiff's blouse to look at her breasts.

[6]The Court notes that, of course, these facts are disputed and are assumed here in a light most favorable to Plaintiffs for purposes of summary judgment only.

Looking at potential conduct as a continuum in terms of whether it is "extreme and outrageous," the conduct of the defendants in <u>Coates</u> is at the upper end of the continuum - obviously intolerable, egregious, and reprehensible - while the conduct of the defendants in <u>Trujillo</u> falls at the lower end of the continuum - decidedly not outrageous.  Obviously, the conduct alleged by Hunter is closer to <u>Coates</u> on the "extreme and outrageous" continuum than the conduct alleged by Williams.  The conduct alleged by Williams falls lower in the continuum than that alleged by Hunter, but, as this Court determined in its Memorandum Opinion and Order on the motion for summary judgment as to Williams' claims, the allegations could be reasonably regarded as sufficiently extreme and outrageous to permit recovery under the tort of IIED.  <u>See</u> Docket No. 184 p. 33.

The conduct alleged by Marquart falls even lower in the continuum than that alleged by Williams.  However, it still falls somewhere within that gray area between the conduct at issue in <u>Coates</u> and that in <u>Trujillo</u>.  At what point in the continuum does an alleged defendants' conduct fall from being capable of being reasonably regarded as extreme and outrageous to not being capable of such regard?  At what point does the gray move close enough toward black or white to call it one or the other?  The Court cannot pinpoint the apex of departure, though the conduct alleged by Marquart is certainly close to that turning point.  Given that there will necessarily be comparisons in this case among the allegations of the various Plaintiffs, and given the standard of review at the summary judgment stage, the Court will reluctantly permit Marquart's IIED claim to proceed to trial.  Accordingly, Defendants' motion for summary judgment on Marquart's IIED claim will be denied.

V.     CLAIMS BY MARQUART AGAINST DEFENDANT LEVINE

The only remaining claims against Defendant Levine are those asserted by Plaintiff Marquart under the New Mexico Human Rights Act.  See Memorandum Opinion and Order filed December 10, 2003 [Docket No. 17].  The only claim remaining under the New Mexico Human Rights Act in accordance with the instant Memorandum Opinion and Order is Marquart's claim for gender hostile work environment under the New Mexico Human Rights Act in Count eleven (XI).  Marquart's evidence with regard to Defendant Levine shows only that she complained to him about Scorpions employee Scotty Morris calling her names at work such as "honey," "baby," "sweetheart," and "darling."   Her evidence does not show that Levine held a position in the W.D. Sports organization that made him in any way responsible to respond to her complaint.  Even examining all the evidence in the case put forth by all of the Plaintiffs, there is no evidence that Levine, who was allegedly hired as the comptroller, CPA and lawyer for W.D. Sports, had any responsibility or duty to respond to Marquart's complaint.  Accordingly, there is no legally cognizable claim against Levine given the facts of this case, and considering those facts in a light most favorable to Plaintiff Marquart.  Accordingly, the Court will *sua sponte* grant summary judgment in favor Defendant Levine with regard to the remaining claim, and he will be dismissed as a Defendant from this action.

In addressing Defendants' Motion for Summary Judgment as to all claims by Plaintiff Hunter, the Court denied in part Defendants' motion with regard to some of the claims.  See Memorandum Opinion and Order filed October 28, 2004 [Docket No. 165].  In a Motion for Clarification, Defendants sought to have the Court determine that individual Defendants Frank and Burgers were entitled to summary judgment with regard to the remaining claims.  See Docket No. 168.  By Memorandum Opinion and Order filed November 4, 2004, the Court, noting that

Defendants' position may have had merit, denied the motion on the basis that the Defendants had not adequately raised the issue of individual liability in their initial motion for summary judgment and accompanying memorandum of law.  See Docket No. 170.

The Court does not retreat from its position in the denial of Defendants' Motion for Clarification.  The situation with Defendant Levine is distinct from that of the other individual Defendants.  At the time the Court ruled on the Motion for Clarification, Defendants Frank and Burgers were Defendants with regard to several claims by several Plaintiffs.[7]  Under those circumstances, the Court was unwilling to begin reexamining the various claims by Hunter in light of the individual Defendants given that Defendants' briefs did not adequately raise the issue.  Conversely, Defendant Levine is a Defendant only by virtue of a single claim by a single Plaintiff, Ms. Marquart.  It would be a miscarriage of justice to force Levine to defend this single claim by Marquart for which there is an utter lack of evidence showing any liability on his part.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment as to All Claims by Maria Marquart [Docket No. 129] is GRANTED IN PART as follows:

1.     Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim for failure to accommodate under the American's with Disabilities Act in Count fifteen (XV).

---

[7]Given the Court's subsequent rulings on other motions for summary judgment, the landscape of this case has changed.

2.      Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim for failure to accommodate under the New Mexico Human Rights Act in Count sixteen (XVI).

3.      Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim under the Equal Pay Act in Count eighteen XVIII).

4.      Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim for breach of contract in Count nineteen (XIX).

5.      Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim for breach of implied contract in Count twenty (XX).

6.      Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim for breach of the implied covenant of good faith and fair dealing in Count twenty-one XXI).

7.      Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim for retaliatory discharge in Count twenty-two (XXII).

8.      Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim for false light in Count twenty-three (XXIII).

9.      Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim for defamation in Count twenty-four (XXIV).

10.      Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim for interference with a business advantage in Count twenty-six (XXVI).

11.      Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim for gender sexual harassment under Title VII in Count seven (VII).

12.     Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim for gender sexual harassment under the New Mexico Human Rights Act in Count ten (X).

13.     Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim for gender disparate treatment under Title VII in Count six (VI).

14.     Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim for gender disparate treatment under the New Mexico Human Rights Act in Count nine (IX).

15.     Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim for aiding and abetting under the New Mexico Human Rights Act in Count fourteen (XIV).

16.     Judgment is GRANTED in favor of Defendants on Plaintiff Marquart's claim for civil conspiracy in Count twenty-five (XXV).

17.     Judgment is GRANTED in favor of Defendant Levine with regard to all Plaintiff Marquart's remaining claims and Defendant Levine is DISMISSED as a Defendant in this case.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment as to All Claims by Maria Marquart [Docket No. 129] is DENIED IN PART as follows:

18.     Judgment is DENIED with regard to Plaintiff Marquart's claim for gender hostile work environment under Title VII in Count eight (VIII).

19.     Judgment is DENIED with regard to Plaintiff Marquart's claim for gender hostile

        work environment under the New Mexico Human Rights Act in Count eleven

        (XI).

20.     Judgment is DENIED with regard to Plaintiff Marquart's claim for intentional

        infliction of emotional distress in Count seventeen (XVII).

_____
UNITED STATES DISTRICT JUDGE